In re BILLING.

(District Court, M. D. Alabama. March 29, 1906.)

**1.** BANKRUPTCY—INVOLUNTARY PROCEEDINGS—NOTICE TO CREDITORS.

Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], not having provided for notice to creditors of the filing of a petition in involuntary bankruptcy, such notice is not necessary, but the filing of the petition by proper parties in the proper court and making the requisite jurisdictional allegations in itself operates as a lis pendens, and notice to all the world.

**2.** SAME—CONCLUSIVENESS OF ADJUDICATION.

The clearly expressed purpose of Bankr. Act July 1, 1898, c. 541, § 18, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3429], is to require the court in involuntary proceedings, when no defense is interposed by the bankrupt or by any creditor within the time fixed, promptly to dispose of the petition by dismissal or by an adjudication, according to the sufficiency of the petition. If the petition contain the proper allegations and is not contested, or the parties contesting withdraw their contest, an adjudication follows as of course, and is binding on all parties in interest.

**3.** SAME.

When an adjudication is passed in an involuntary proceeding, upon a petition filed in the proper district, for want of contestation by the debtor or any creditor within the time prescribed, or where such contestation was made and subsequently withdrawn, the adjudication cannot be assailed for error intervening, or upon any other ground save for fraud in the procurement of the adjudication, injurious to creditors generally, or for want of jurisdiction apparent on the face of the proceeding.

**4.** SAME.

A creditor who has not controverted a petition before adjudication is in no position to assail it for error, and cannot get the benefit of an appeal for that purpose, which the statute requires to be taken within 10 days, by afterwards moving to vacate the adjudication on the ground of error in the proceeding, which would be an indirect mode of appealing after the time had elapsed.

**5.** SAME—ADJUDICATION BY CONSENT—WHEN NOT COLLUSIVE.

If a debtor against whom an involuntary proceeding is filed be insolvent and has committed an act of bankruptcy, his consent at the instance of petitioning creditors, or agreement with them to withdraw resistance and to be adjudicated a bankrupt, is neither unlawful nor immoral, and an adjudication passed on such consent, when no one but the bankrupt had contested the petition, cannot be attacked by other creditors as collusive.

6. SAME—WITHDRAWAL OF CONTEST BY DEBTOR—NOTICE.
. A debtor who contests an involuntary proceeding in bankruptcy against
him does so in his own behalf, and not in the interest of his creditors,
and is at liberty to withdraw his opposition at any time when done in
good faith without notice to his creditors.

7. SAME—ACTS OF BANKRUPTCY—SUFFICIENCY OF PROOF.
When creditors of an insolvent grantor in a petition in bankruptcy as-
sail the transfer as an act of bankruptcy, and it is shown that the alleged
bankrupt was indebted to the grantee, and neither testify, and nothing
relating to the transaction appears in the debtor's books, a finding is justi-
fied that the transfer was preferential and constituted an act of bank-
ruptcy.

8. SAME—ESTOPPEL.
The failure of a creditor to enter an appearance in involuntary pro-
ceedings in bankruptcy against his debtor during the two years which
elapsed before such creditor's death and during which time no adjudica-
tion had been made estops his administrator from assailing the adjudica-
tion after it has been made and the estate has been partially administered.

In Bankruptcy.   On petition to vacate adjudication.

On the 15th of January, 1903, a petition was filed against F. M. Billing by
certain of his creditors, praying that he be adjudged a bankrupt, the act
of bankruptcy charged being the making of a conveyance of a part of his
real estate, on December 22, 1902, while insolvent, etc.   Billing appeared
and contested.   The matter was referred to the referee to ascertain and re-
port the facts.   Upon the coming in of his report and finding, on the 18th of
August, 1905, the court adjudged Billing a bankrupt.   Mrs. S. H. Downer,
a creditor, died on the 16th of February, 1905, Teasley qualified as her ad-
ministrator on the 11th of January, 1906, and 13 days thereafter filed his
petition to vacate the adjudication.   The petition, in the main, correctly
stated the proceedings, except that it did not recite the order of reference
to the referee, and stated there was never any trial of the contest raised by
Billing's answer.   It stated, among other things, that on the day of ad-
judication Billing filed the following paper in the clerk's office:

"To the Hon. Thos. G. Jones, Judge of the District Court for the Middle
District of Alabama:

"The undersigned, F. M. Billing, against whom a petition was filed on
the 15th day of January, 1903, asking that he be adjudged an involuntary
bankrupt, respectfully showeth unto your honor: That on account of the
changed condition of affairs affecting his estate, and believing that it is to the
best interest of his creditors so to do, does hereby unconditionally, consent
that the court may enter up an order adjudging him a bankrupt.   In taking
this action the undersigned feels called upon to state to the court, and to his
creditors that in doing so he denies that he, at any time, committed any act
of bankruptcy, nor has he allowed any creditor to obtain any preference over
any other creditor; but since the filing of said petition some few of his
creditors have obtained judgment upon the unpaid instalments due on the
agreement with all his creditors, and being advised that an execution issued
under these judgments could be levied on his property, in the event the
petition in this cause should be denied, he prefers to be declared a bankrupt,
rather than allow the impatient creditors to get any advantage over the great
number of his creditors who have been so patient.   While the undersigned
feels greatly disappointed that he was unable to meet the instalments at
the time specified in the agreement signed by all the creditors, as they became
due, he feels that all his actions up to the present time have been to the
best interest of his creditors, and that his creditors have obtained more by
their decision to allow him to try to work it out, than they would have done
had his estate been put in bankruptcy at the time of his suspension in Janu-
ary, 1901.   The undersigned wishes to further state that he is still willing
to render any assistance possible in the management of his estate to the end
that as much as possible may be realized from it.

"Very respectfully,                                         F. M. Billing."

The petition further averred that there was filed in the clerk's office at the same time with the above paper, what "purported" to be the following report of a reference:

"In the District Court of the United States, Middle District of Alabama.

"In the matter of F. M. Billing, Bankrupt. In Bankruptcy.

"To the Honorable Thomas G. Jones, Judge of Said Court:

"I respectfully beg leave to report that pursuant to the order of reference heretofore made in said cause, wherein I was directed to take evidence under the original petition in said cause, and report whether said F. M. Billing had committed an act of bankruptcy, I have held said reference and have taken evidence touching the matters at issue, and I find that said F. M. Billing is insolvent and has committed an act of bankruptcy, and that the prayer of said petition should be granted.

"Asa E. Stratton, Referee in Bankruptcy."

It was further alleged that upon the filing of these papers, the court made an order "purporting to adjudge Billing a bankrupt," as follows:

"District Court of the United States, Middle District of Alabama.

"In the Matter of F. M. Billing, Bankrupt. In Bankruptcy.

"This cause coming on to be heard upon the petition of The Central of Georgia Railway Company, et al., praying that F. M. Billing, lately doing business in the name and style of 'Josiah Morris & Company,' be adjudged a bankrupt, and upon the report of Asa E. Stratton, referee, to whom was referred the petition with directions to take testimony, and report whether said F. M. Billing was insolvent and had committed an act of bankruptcy, and the said Billing also making no objection and having filed his consent in writing to such adjudication, and the court being of opinion that the petition should be granted, and the adjudication ordered as prayed, it is, thereupon, ordered, adjudged, and decreed by the court that the said F. M. Billing be, and he is, hereby adjudged a bankrupt, within the purview of the act of Congress relating to bankruptcy, and the matter is hereby referred to the referee, to take such further steps in the administration of the estate as are required by law. This August 18, 1905."

The petition then concludes: "Your petitioner avers that said adjudication was procured by and with the consent and collusion of said Billing and of said petitioning creditors, and without any notice to the other creditors of said Billing, who are and were numerous, and without any opportunity being afforded them to be heard in opposing said adjudication, and without any proof of any alleged act of bankruptcy on the part of said petitioner." It prayed that notice be given Billing and the petitioning creditors, etc.; that on the hearing, the order adjudging Billing a bankrupt be vacated and annulled; and that the petition in bankruptcy be dismissed. The petitioning creditors and the bankrupt demurred to the petition on numerous grounds, among others, that it was not alleged that said Billing was not, in fact, insolvent, and had not committed an act of bankruptcy; that the creditors were not entitled to any notice of Billing's withdrawal of his contest of the petition or of his consent to adjudication, and were bound by the adjudication; that the averment that the adjudication was procured by collusion was the averment merely of the conclusion of the pleader, without stating the facts to support it. The creditors also answered, setting up the appointment of a receiver on the filing of the petition, the expenditure by him of some $10,000 in discharging liens and incumbrances on the estate and in preserving the same, and the disposition of some $50,000 of property under the orders of the court. They also set up the meeting of creditors, the examination of the bankrupt, the election of a trustee, and the conveyance and sales of large amounts of real and personal property under the orders of the court; that the intestate in her lifetime never appeared in the proceeding, or made any objection thereto, and that her administrator was not appointed until some months after her death, and filed his petition six months after the order of adjudication, etc. These various matters were set up in separate pleas to which Teasley demurred.

The court, being of opinion that the issue as to the failure to take proof of an act of bankruptcy, could not be raised in the manner attempted, but that if it could. the issue must be tested by the record, which spoke for itself on that point, and not by the allegations of the pleader, and the admissions by the demurrers as to what the record contained, and that the petition to vacate the adjudication brought the record of the case in which it was rendered before the court, declined to pass upon the matter, as presented by the demurrers to the petition. or those interposed to the pleas, but inspected the record to determine every issue sought to be raised, except as to the alleged collusion between the bankrupt and the petitioning creditors, as to which the court heard evidence. The trustee and the petitioning creditors, however, formally offered the record of the proceeding up to the time when the petition to vacate the adjudication was filed, including the evidence taken before the referee, and reported by him to the court along with his finding. It was shown that the bankrupt made no agreement with the petitioning creditors to withdraw resistance to the petition, and they were not aware of his purpose until after the paper consenting to be adjudged a bankrupt was filed. This step was taken by the bankrupt after consultation with his counsel, because he felt if the petition were defeated, it would result in preferences to some of his creditors which he desired to avoid.

Martin & Martin, for the motion.
Steiner, Crum & Weil and Ray Rushton, opposed.

JONES, District Judge. 1. The Constitution vests broad power in Congress "on the subject of bankruptcies," and it has a wide field of discretion as to the modes of procedure for ascertaining and declaring the status of bankruptcy. If a bankruptcy statute provides for proper notice and fair opportunity to the debtor to defend against adjudication in an involuntary proceeding, due process is not denied creditors, although no provision be made for giving them notice, or, for that matter, for allowing them to become parties to the proceeding. Congress, not being bound to provide for notice to creditors of the institution of involuntary proceedings, has made no provision for such notice, other than that which results by operation of law from the filing of the petition. The proceeding is in a large sense in rem. What is done therein is binding upon creditors, whether or not they have actual notice or knowledge of the pendency of the proceeding. The filing of the petition by proper parties, making the jurisdictional allegations, operates as lis pendens, and is notice to all the world. Bank v. Sherman, 100 U. S. 406, 25 L. Ed. 866; Mueller v. Nugent, 184 U. S. 14, 22 Sup. Ct. 269, 46 L. Ed. 405. Moreover, it seldom happens in these days of newspapers, and the activity of collection and commercial agencies, that creditors do not, in fact, have ample knowledge of the filing of the petition, in time to contest the adjudication against their debtor, if they so desire, within the 20 days allowed them, after the filing of the petition, in which to appear and "controvert the facts."

Section 18, Bankr. Act. July 1, 1898, c. 541, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3429], provides for service upon the alleged bankrupt of the petition with subpœna, etc., and subdivision "b" of the same section declares that any creditor may appear and plead to the petition within five days after the return day. Subdivision "d" provides, if the bankrupt or any of his creditors fail to appear within

the time limited and "controvert the facts alleged in the petition," the judge shall determine, as soon as may be, the issues presented by the pleadings without the intervention of a jury, except in cases where a jury trial is given by the act, "and make the adjudication or dismiss the petition." Subdivision "e" provides if, on the last day within which pleadings may be filed, none are filed by the bankrupt or any of his creditors, "the judge, shall, on the next day, if present, or as soon thereafter as practicable, make the adjudication or dismiss the petition." Subdivision "f" provides "if the judge be absent from the district or division of the district in which the petition is pending, on the next day after the last day on which pleadings may be filed, and none have been filed by the bankrupt or any of his creditors, the clerk shall forthwith refer the case to the referee." The statute is mandatory and insistent that the adjudication be had or the petition be dismissed as soon as possible, after the time has expired in which the debtor and creditors may plead. It is quite foreign to its purpose to give the right to notice of the proceeding to a creditor, or to permit one who has not made himself a party, within the time prescribed by law, to be heard as to the adjudication.

The bankruptcy statute carefully selects and specifies the instances in which it intends to give the creditor the right to notice. The only instance in which any right to notice is given the creditor, as to the disposition of an involuntary petition, is when it is proposed to dismiss the proceeding by consent of parties, or for want of prosecution. Sections 58 and 59, 30 Stat. 561, 562 [U. S. Comp. St. 1906, pp. 3444, 3445]. Controversies in bankruptcy would never end, and adjudications would amount to little more than mere interlocutory orders, if creditors, who did not make themselves parties, could afterwards come in, claiming they had no notice of the adjudication or petition, and then move to upset the judgment on the ground of error intervening after jurisdiction attached. Aside from this, the theory of the argument that when the bankrupt after making a contest subsequently withdraws it, the creditor has rights which he would not have if the bankrupt had not contested in the first instance, is wholly unfounded. The creditor has no vested interest or property rights in the debtor's appearance and contest, and cannot prevent the debtor's withdrawing his contest at any time he sees fit. The adjudication passes the debtor's title, save as to his exempt property, to the trustee, and imposes certain duties upon the debtor, and may radically affect the rights of creditors as between themselves, and puts certain duties upon them if they desire to share in the insolvent's estate. The law makes the debtor the sole judge whether he will resist the adjudication, in order to avoid its consequences to him and his rights; and it likewise makes the creditor the sole judge whether he will resist the adjudication, in order to avoid its effect upon him and his rights. A creditor who wishes to prevent an adjudication but fails to contest the petition, is none the less in default, because the debtor, who has appeared and contested the petition, afterwards withdraws his contest, without notice to the creditor. The debtor's contest, in the eye of the law, is for himself, and not for the creditor. The debtor is not

bound to resist the adjudication in the interest of any of his creditors, and has the same right to withdraw a contest once begun, as he has to refuse to contest in the first instance.

When an involuntary petition is filed and proper service made upon the bankrupt, and there is no appearance by the debtor or any of his creditors, the court must thereupon either pass an adjudication of bankruptcy or dismiss the petition. If the petition be unresisted, there is no question before the court except as to the sufficiency of the petition. That raises an issue of law. It must be tested solely by the averments of the petition, and the law does not permit, much less require, the taking of proof on such an issue. When, as here, the petition is filed by the proper parties, in the proper district, and makes all the jurisdictional allegations, and is uncontested, the failure to contest the petition by any person having the right, so to do, establishes the truth of the allegations of the petition. The law, thereupon, demands an adjudication of bankruptcy which, when thus rendered, is binding on all the world. Every creditor was conclusively charged with notice of the pendency of the proceeding and what was being done to bring about adjudication, and no creditor can be heard to set up want of knowledge or notice of the proceeding as an excuse for not controverting the petition before adjudication, or as a reason why it shall not bind him.

2. The District Court of the United States is a court of limited, but not inferior jurisdiction. Congress has conferred upon it original and exclusive jurisdiction to adjudge bankruptcies, and its judgments therein are supported by the same presumptions which are indulged in favor of the judgments of all superior courts of general jurisdiction. When jurisdiction is shown to have attached, the indisputable presumption, save when the question is raised by appeal or an attack upon the adjudication for fraud in its procurement, is that there was sufficient evidence to support the judgment. The petitioner here, who has not appeared, cannot, by indirection, by motion to vacate the adjudication, obtain the benefit of an appeal or other revisory writ, and thus compel the court to go behind the petition and the adjudication, and search the evidence to see if it justified the judgment. If, however, the petitioner were in position to raise the question in the way here attempted, it would not avail in the state of this record. The adjudication is based upon a finding of fact, on evidence reported by the referee as a special master. A motion to vacate the adjudication on the ground that the proof did not sustain the finding, must, necessarily, stand or fall upon the evidence taken and reported by the referee. Here, the insolvency was admitted. The execution and delivery of the conveyance charged to constitute an act of bankruptcy were proved. The bankrupt did not testify as to this matter. The books of the bank were put in evidence. No entry could be found in the cash account or elsewhere, concerning the receipt of the sum mentioned in the deed. No entry was discovered, which could be traced to the sale or to any transaction relating to it. It may be, as argued, that the bankrupt received the cash consideration mentioned in the deed, and failed to enter its receipt upon the books of the bank.

The absence of such entry is certainly no proof that the money was paid to him; and the burden is upon him, or those claiming under him, to show that the sale was for cash, and that the bankrupt received the money. The recital in a deed of the receipt of the purchase money is a mere admission of the grantor, which is not at all binding upon his creditors. The burden of proving payment of the consideration, named in the deed, is upon the bankrupt, when a creditor of an insolvent grantee assails the transfer as an act of bankruptcy. The bankrupt had been in failing circumstances for many months prior to the making of the deed. He suspended his banking business in January, 1901, for four months, and then resumed after obtaining an extension from his creditors, upon an agreement with them to pay the principal of his debts installments, without interest. Many of these installments were afterwards paid; while a goodly number remain unpaid. The grantee in the deed had rendered professional service to the bankrupt prior to the making of the deed. There was no entry or other reference upon the books as to this indebtedness, or that the grantee had been paid for these services, or that any settlement whatever had been had with him in relation thereto. The presumption that the particular conveyance was made to settle this past indebtedness, and not for a cash consideration as stated in the deed, was not at all unreasonable, under all the circumstances. Neither the grantee nor the bankrupt, upon whom rested the burden to show the payment of a cash consideration for the property, testified upon that point, although both had opportunity and incentive to make the proof, if it were a fact that the consideration named had been paid in cash. The grantor and the grantee lived in the same city. The insolvency of the banking business which Billing conducted had been a matter of general notoriety for months before the deed was made. The situation was such that the parties must have known that the sale of the property mentioned in the deed in satisfaction of an antecedent debt would inevitably give the grantee an unlawful preference. Reasonable men, in view of the known facts, could not have expected or intended any other result, and the law, upon the facts, imputed a purpose and intent to give and receive an unlawful preference, which constituted an act of bankruptcy. It would have been better if the finding had specifically responded to the particular act of bankruptcy charged. Only one act was specified in the original petition, and the general finding of the referee, under the terms of the reference, cannot possibly be referred to, or relate to, any other act. Many of the authorities attach the same effect to the finding of a master on the facts, as to the verdict of a jury. In no event, can such a finding be disturbed, unless it be manifestly erroneous, and that, in view of the facts disclosed in the record, cannot be fairly maintained here.

3. Petitioner also assails the adjudication as collusive. The evidence does not sustain that charge. The provision of the statute giving a creditor a right to resist the petition of other creditors to force their common debtor into bankruptcy, unless the debtor be insolvent and has committed an act of bankruptcy, is part and parcel of the same

statute which gives that same debtor, whether he be solvent or insolvent, and whether or not he has committed an act of bankruptcy, the absolute right, at his own election, to be adjudged a bankrupt upon his own petition, whether or not his creditors consent, and whatever may be the effect of the adjudication upon their rights. These provisions are in pari materia. Thus construed, the provision allowing the creditor to contest the involuntary proceeding cannot be held to take from the alleged bankrupt the right or privilege, if he chooses to exercise it, of withdrawing his defense after it is begun, to an involuntary petition, or, for that matter, filing a voluntary petition while the involuntary petition is still pending against him. In re Stegar (D. C.) 113 Fed. 978.

It is often vital to the interests of creditors that the debtor's business, though in a critical condition, be not taken out of his control. The owner, left to the conduct of the business, may mend his fortunes, and save loss to the creditors, when a trustee or receiver could not take the business and do as well. In recognition of this interest of the creditor in his debtor's remaining in control of his own affairs, the statute authorizes the creditor to intervene in involuntary proceedings, to prevent his debtor from being put in bankruptcy, unless he be insolvent and has committed an act of bankruptcy. This provision intended to arm the creditor with effective means, placed directly in his own keeping, of assisting the debtor to resist an improper effort to force him into bankruptcy, and also to give the creditor like effectual means of preventing his debtor and petitioning creditors from colluding to bring about the adjudication, when the debtor is not insolvent and has not committed an act of bankruptcy, and is unwilling to institute voluntary proceedings. It was not within the contemplation of the statute, when the debtor is, in fact, insolvent, and has committed an act of bankruptcy, to give to the creditor the right to contest the adjudication, merely to keep alive a lien or levy, which would be destroyed if the petition be not defeated; for that is contrary to the spirit and purpose of the bankruptcy law. The contest of the petition for the latter purpose is an abuse of the statute. So long as he appears within the time prescribed by law, the creditor may wage his contest as to the insolvency and the act of bankruptcy, whatever his ulterior motive; but when, as here, it is not denied that the bankrupt was insolvent, and has committed an act of bankruptcy, a creditor who has not appeared within the time prescribed by law, ought never afterwards to be allowed to assail the adjudication, for anything short of fraud in its procurement, injurious to creditors generally, or for want of jurisdiction apparent on the face of the record in the court which rendered the adjudication.

It is neither immoral nor illegal nor contrary to public policy for petitioning creditors to urge upon their debtor, who is in fact insolvent, and has committed an act of bankruptcy, not to resist the adjudication in an involuntary proceeding, or for such a debtor to heed the importunity of creditors at any stage in the proceeding against him. When such a debtor does no more than abandon resistance once begun to an effort to adjudicate him a bankrupt, and consents to be

adjudged, because he deems it for the best interest of all his creditors, his conduct whether induced solely by his own volition and judgment, or inspired by the solicitation of creditors, and whether or not there be any formal agreement between the debtor and the petitioning creditors as to his consent to an adjudication, does not work any fraud or wrong upon creditors. The law gives the creditors the right to force such a debtor into bankruptcy. Having the right under the law and facts of this case to force the debtor into bankruptcy, his creditors had a perfect moral and legal right to seek to end the prolonged litigation, by agreement to that end between themselves and the bankrupt. The bankrupt could lawfully consent in advance to a decree, which the law, on the evidence, would surely pronounce against him, if the litigation continued. In such a case the law seeks to bring about the equitable pro rata distribution of his estate among his creditors, according to the provisions of the bankruptcy statute. His consent only aids in carrying out the policy of the statute, and in bringing about a status, which the law, under the circumstances, declares ought to exist. Aside from this, the consent of the bankrupt to be adjudicated was made after the finding of the referee, who took evidence on the subject, that the debtor was insolvent and had committed an act of bankruptcy. The debtor, therefore, neither conceded nor consented to anything which had not already been adjudged against him, in a trial while the proceeding was still adversary. The paper filed by the bankrupt in the clerk's office, simultaneously with the filing of the referee's report, was intended to subserve no other purpose than an explanation to the bankrupt's creditors of his conduct in the premises. The bankrupt, from the beginning, denied his insolvency and the commission of an act of bankruptcy. His iteration of that denial in this paper added no force to the former denial, and could not invalidate or lessen the effect of the referee's adverse finding on that point. The bankrupt took no exceptions to the adverse report. The order of adjudication was passed upon the referee's finding and report, which abundantly supported the adjudication, as well as upon the bankrupt's consent to be adjudged a bankrupt. The paper could serve no other legal purpose than evidence of consent, and was not authorized as pleading of any sort, at that stage of the proceedings. It was filed without leave. The court might properly have ignored it altogether. In its discretion, it allowed it to remain on file, and treated it as a consent to adjudication, which by no means depended on that consent, because of the conviction that it was for the interest of all concerned to take away all excuse for further protracting this litigation. Whatever else may be said of the paper, or the reasons given by the bankrupt for the course he took, it is clear that it was an unconditional abandonment of the bankrupt's contest of the adjudication. It put an end to all resistance to the petition by the only party before the court, and in that state of the case the law demanded the adjudication, even if it rested solely on the consent.

4. There are other reasons equally fatal to the petitioner's right to maintain this petition. The proceeding had been pending for nearly two years before the intestate died. Aside from the fact that the law

conclusively charged the intestate with notice of the filing of the petition and what was being done in the proceeding, it is a just inference from the facts that the intestate had actual knowledge. The proceeding related to a large banking business which had failed in January, 1901, and then started up again, and was carried on for some months before the bankruptcy proceedings were instituted. The intestate, who lived in another state, must have heard of the suspension, for the claim was afterwards put in the hands of a leading resident attorney here, and he corresponded with his client about the status of the claim. It is certainly a fair, if not an irresistible, inference, from the facts that the intestate actually knew of the bankruptcy proceeding, and what was being done therein, months before the adjudication. The intestate had ample time and opportunity to become a party and contest the adjudication if she so desired, but remained content to stand aside and watch the proceeding, and leave the final direction it should take to the bankrupt, so far as she was concerned. The diligence of the personal representative, after his appointment, cannot excuse intestate's negligence in failing to become a party and controvert the petition. The effort to vacate the adjudication was not made until hundreds of creditors had proved their claims, and had elected a trustee, who qualified and entered upon the discharge of his duties. The bankrupt had been examined. Property had been sold. Orders had been made and rights had attached on the faith of the adjudication, and the bankrupt had proposed a composition, which had been accepted by the great majority of his creditors, and was then awaiting the action of the court. If the adjudication be now set aside, contest of the petition would have to be gone over anew. If the petition be not dismissed on a second trial, nothing would result from vacating the adjudication but vexatious delay, and additional and fruitless expense. On the other hand, if the adjudication be vacated, and the petition be finally dismissed, it would result in the saving of preferences to a few, to the detriment of the great body of creditors. If this creditor ever had the legal right to put the other creditors to delay and expense, by insistence upon his legal right to oppose adjudication, in order to save preferences by defeating the petition, it was incumbent upon him to see to it that his right was promptly asserted, in the time and mode prescribed by law, before the adjudication was made. A creditor cannot sit still until an adjudication is made, if he might have obviated it by timely objection, and then complain of a situation which has grown up in consequence of an unresisted adjudication, which cannot now be undone, without prejudice to the bankrupt estate, and rights which have grown up on the faith of the adjudication and the orders made thereunder.

5. Again, the prime object of the statute is the speedy disposition of involuntary proceedings, and the prompt distribution of the estate of persons who are found to be insolvent. To that end, the statute exacts speedy decision upon the petition, and specifically requires that appeals from adjudications shall be taken within ten days. It would be a palpable evasion of the letter, and a plain nullification of the spirit, of this provision to entertain a motion made to vacate months after the ad-

judication by a creditor who never made himself a party to the proceeding. Moreover, if we concede, which was clearly not the case here, that the adjudication passed without proof of an act of bankruptcy, upon the wrongful consent of the debtor to the adjudication, and that a creditor who had not made himself a party because ignorant of the pendency of the proceeding, could upon being advised promptly raise the question by a motion to vacate the adjudication, the petitioner is still met with the objection that the conduct of the intestate in this matter was such as necessarily led the court to believe, so far as she was concerned, that there was no objection to the adjudication, and that she was content that the proceeding take such course as the bankrupt might elect to give it. It is too late, after the bankrupt has abandoned resistance, and the court has acted on the view that petitioner did not desire to contest, for petitioner to come forward now, for the first time, and object to the adjudication, because the court failed to take proof, which it was not required to exact, except when the petition is resisted. A litigant cannot put a court in error in that way.

For all these reasons the petition must be dismissed.