COPPARD et al. v. GARDNER, Sheriff, et al.
(No. 5920.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 28, 1917. Rehearing Denied Jan. 2, 1918.)

1. BANKRUPTCY �köm87 — INVOLUNTARY PROCEEDINGS—NOTICE TO CREDITORS.
The filing of a petition in involuntary bankruptcy by proper parties, making the jurisdictional allegations, operates as lis pendens and is notice to all creditors.

2. BANKRUPTCY �köm203 — DISSOLUTION OF LIENS BY ADJUDICATION—BONA FIDE PURCHASERS.
Under the terms of Bankr. Act July 1, 1898, c. 541, § 67, subd. "f," 30 Stat. 564 (U. S. Comp. St. 1916, § 9651), the liens of all judgments, executions, and levies obtained within four months of filing of a petition against a debtor are annulled upon the adjudication of bankruptcy, but titles obtained under such liens by bona fide purchasers for value and without notice or reasonable cause of inquiry are preserved, while money collected on judicial writs and not paid over to plaintiff belongs to the state in bankruptcy.

3. BANKRUPTCY ⊦köm279—INVALID SALES—LIABILITY—NOTICE.
A sheriff is not liable to the trustee in bankruptcy for conversion, although he sells property under levy after the bankruptcy proceedings began, unless he had notice thereof.

4. BANKRUPTCY ⊦köm200(4)—LIENS—VALIDITY AS AGAINST TRUSTEE.
Where a judgment obtained more than four months before judgment debtor was adjudicated a bankrupt did not create a lien, a levy within the four months is void.

5. EVIDENCE ⊦köm43(4) — JUDICIAL NOTICE — PROCEEDINGS IN OTHER COURTS.
A state court is not bound to take judicial notice of the filing of a petition in bankruptcy, but must have notice through pleadings filed.

6. BANKRUPTCY ⊦köm279—NOTICE OF OWNERSHIP.
Notice to a sheriff that a judgment debtor is in bankruptcy must come through official channels and a notice of intention to bring bankruptcy proceedings is insufficient.

7. SHERIFFS AND CONSTABLES ⊦köm151—INDEMNITY BOND—ATTORNEY'S FEES.
There is no authority under Texas law for assessment of attorney's fees against creditors or sureties on sheriffs' indemnity bonds taken under Rev. St. 1911, art. 253, when sued for conversion, unless the bonds so provide.

Appeal from District Court, Dimmit County; J. F. Mullally, Judge.

Suit by M. Coppard and others against W. T. Gardner, Sheriff, and others. Judgment for plaintiff as against certain defendants and in favor of defendant Gardner. Exceptions by F. Vandervoort, the Memphis Coffin Company, and A. P. Johnson sustained. Plaintiff and cross-defendants Kell Milling Company, J. E. Doran, and J. A. Birdsong appeal. Affirmed as between plaintiff and

defendant Gardner. Reversed and rendered as between the Sheriff and other parties.

J. D. Crenshaw, of San Antonio, for appellants. Vandervoort & Johnson, of Carrizo Springs, W. D. Love, of Uvalde, and N. A. Rector, of Austin, for appellees.

FLY, C. J. This is a suit instituted by M. Coppard, trustee of the estate of Mary E. Butler, bankrupt, against W. T. Gardner, individually and as sheriff of Dimmit county, for conversion of property of said Mary E. Butler, a petition for bankruptcy having been filed, on account of her insolvency, on March 13, 1914, and the said Coppard had been duly appointed trustee of her estate. Attached to the petition is an itemized list and statement of values of the articles of personal property alleged to have been converted. The sheriff answered, in effect, that he had seized and sold the property in question under and by virtue of orders issued out of several state courts, and had required and taken certain indemnity bonds for his protection, and he prayed that the parties for whom he had sold the property be made parties, and that he have judgment against them for any judgment rendered against him. Those parties answered in the case. The court rendered judgment in favor of W. T. Gardner as against the trustee and in his favor as against certain of the cross-defendants for his attorney's fees. An exception by F. Vandervoort, Memphis Coffin Company, and A. P. Johnson was sustained. M. Coppard, the plaintiff, and cross-defendants the Kell Milling Company, J. E. Doran, and J. A. Birdsong appealed.

The facts show that the petition for involuntary bankruptcy as to Mrs. M. E. Butler was filed by some of her creditors on March 13, 1914. The first judgment under which the sheriff acted in seizing and selling personal property of Mrs. Butler was obtained on December 8, 1913, and others were obtained in that month and in January, February, March, and April, 1914, and the sales under orders of sale began on February 28, 1914, and continued at intervals until March 14, 1914. All the seizures of goods were within four months of March 13, 1914, when the petition for bankruptcy was filed; one judgment, however, not being obtained in the four months. There is no dispute about the facts, and the trial judge justified his judgment in favor of the sheriff on the ground that he had no notice of the bankruptcy proceedings.

[1] The filing of a petition in involuntary proceedings in bankruptcy by proper parties, making the jurisdictional allegations, operates as lis pendens, and is notice to all creditors, and no other notice to creditors is required. Collier on Bankruptcy, p. 858; In re Billing (D. C.) 145 Fed. 395.

[2] In subdivision "f" of section 67 of the bankrupt statute, as enacted in 1898, in February, 1903, and in June, 1910, it is provided:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien, shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien, shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect: Provided, That nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry." U. S. Comp. St. 1916, § 9651.

Under the terms of this statute the liens of all judgments, executions, and levies obtained within four months prior to the filing of the petition are annulled upon the adjudication of bankruptcy. The provision as to judgment liens has no applicability in this case, for the reason that the judgments gave no lien and would apply only to the attachment liens or execution liens.

The statute declares that all judgments, attachments, levies, and other liens secured through legal proceedings obtained within four months of the filing of the petition in bankruptcy are void, and the Supreme Court of the United States has held that until the money collected under the judicial writs is paid over to the plaintiff the law would apply as to the money, and it would belong to the estate of the bankrupt. Clarke v. Larremore, 188 U. S. 486, 23 Sup. Ct. 363, 47 L. Ed. 555.

The case of Conner v. Long, 104 U. S. 228, 26 L. Ed. 723, is one directly in point in this case. The facts in that case were that on July 20, 1875, an attachment was issued in a certain action in a state court, and certain personal property belonging to Spaulding, defendant, was seized and sold on August 1st, on the ground that it was perishable. Final judgment in the cause was had on September 15, 1875, and execution was issued on same date and returned on September 20th, showing that the proceeds of the sale ordered by the court had been paid to the judgment creditor. The petition for bankruptcy was filed on July 23, 1875, and Spaulding was adjudged a bankrupt on September 4, 1875. The assignee sued Conner, the sheriff, for conversion of the goods sold by him. The sheriff denied:

"That he knew or in any way had any notice or intimation of alleged proceedings in bankruptcy until subsequent to such sale and until after the payment over by this defendant of the money so received by him upon such sale, as hereinafter set forth."

The trial court instructed the jury that the sheriff was guilty of conversion of the

property and was liable to the plaintiff for its market value. It was assumed that the sheriff had no notice of the bankruptcy proceedings as pleaded by him. The Supreme Court, in considering the four months provided by the statute as to attachments, held:

"One consequence is that, if property of the debtor levied on under such attachment has been sold prior to the filing of the petition in bankruptcy, but thereafter the proceeds of the sale remain in the hands of the sheriff, or have been applied before the assignment to the payment of the judgment in the attachment suit, the rights of the assignee attach to the money, and cannot follow the property sold, for, not being subject to the attachment of the bankruptcy proceedings, the title to the attached property is not thereby transferred to the assignee; but, the attachment being dissolved upon that event, the right to the proceeds of the sale passes under the assignment, released from the claims of all parties to the attachment suit, as of the date of the commencement of the proceedings in bankruptcy. And in such a case the plaintiff in the attachment suit, having received the proceeds of the sale on his judgment, would be liable to an action by the assignee for the sum of money had and received to his use; or, if it remained in the hands of the sheriff, the assignee might become a party to the action and obtain an order of the court, requiring the amount to be paid directly to himself. Another result is that, if the property has been sold under the attachment after the commencement of the bankruptcy proceedings, no title passes by the sale, for the property ceased at that time to be the property of the bankrupt, and became the property of the assignee, a stranger to the action, and not affected by it; and both the plaintiff in attachment and the purchaser at the sheriff's sale would be liable to the assignee for a conversion of his property—the one for having caused its sale; the other for having taken possession of it as owner."

The innocent purchaser under the law of 1898 is protected.

[3] The court, after reviewing several cases, as to the liability of the sheriff showing his liability only in so far as there was erroneous action on his part in executing the writ, held:

"It is manifest that the act of the sheriff for which he is sought to be charged in the present action is not within the rule established as to the latter class of cases; for he neither had nor exercised any discretion in making the sale, and, doing only what he was specifically and in terms commanded to do by the order of the court, the court is responsible for his obedience."

The court further held:

"There is no language in the Bankruptcy Act that, either expressly or by any necesary implication, requires us to hold the officer liable in such circumstances; nor is its policy defeated or thwarted by refusing to do so. The opposite conclusion is based upon an inference from the doctrines relating to the conversion of personal property, and in our opinion is a misapplication of the principle invoked."

The court held that the sheriff was not liable for conversion, although the sale under attachment took place after the bankruptcy proceedings had been begun. We have seen no case by the Supreme Court that questions the correctness of the decision in Conner v. Long, although the case was cited on another point approvingly in Jones v. Springer, 226 U. S. 148, 33 Sup. Ct. 64, 57 L. Ed. 161. The Conner v. Long Case places no liability on the sheriff unless he had notice of the pendency of proceedings in bankruptcy.

[4, 5] The judgment obtained on December 8, 1913, was not within the four months' period, but under our laws it did not create a lien, and, so far as it and all the judgments afterwards obtained are concerned, the executions and attachments issued within the four months gave no liens superior to the rights of the trustee which arose by the filing of the petition in bankruptcy.

In the case of Clarke v. Larremore, hereinbefore cited, it was held that, if the money from a sale under execution was in the hands of the sheriff when the petition in bankruptcy was filed, the money belonged to the bankrupt's estate, and should not be paid to the judgment creditor. The court said:

"The purchaser at the sheriff's sale might keep possession of the property which he had purchased, but the money received as the proceeds of such sale would undoubtedly belong to and should be paid over to the judgment debtor. The bankruptcy proceedings operated in the same way. They took away the foundation upon which the rights of the creditor, by judgment, levy, and sale, rested. The duty of the sheriff to pay the money over to the judgment creditor was gone, and that money became the property of the bankrupt, and was subject to the control of his representative in bankruptcy."

Speaking of certain New York cases considered in the opinion, the court further said:

"In none of those cases had anything been done to affect the validity or force of the writ of execution. Whatever was done was done under a writ whose validity and potency were unchallenged and undisturbed; while here, before the writ of execution had been fully executed, its power was taken away. Its command had ceased to be obligatory upon the sheriff, and the execution creditor had no right to insist that the sheriff should further execute his commands."

The facts in that case briefly stated were that on January 23, 1899, E. H. Clarke began an action on notes signed by R. W. Kenney, and recovered judgment. An execution was levied on certain stock and fixtures belonging to Kenney and the goods were sold. Shortly after the levy of the execution a writ of attachment was issued at the instance of one Leon Abbett and levied on the same property. He sought to enjoin the sheriff from paying the proceeds of the sale to Clarke. The court dissolved the temporary injunction, and before the sheriff had paid the money to Clarke a petition in involuntary bankruptcy was filed, and an injunction was issued by the federal judge to restrain the sheriff from paying the money to Clarke. Kenney was afterwards adjudged a bankrupt, and the federal judge ordered the sheriff to pay over the money to Larremore, the trustee. The case finally reached the Supreme Court of the United States, and the judgment was affirmed. There is no conflict between this and the Conner v. Long Case. The Larremore Case was decided under the bankrupt law of 1898, which is in some respects different from the law of 1867, under which the decision in Conner v. Long was rendered, but not sufficient

to involve the points decided. However, it has been held in a number of cases, as well as in Conner v. Long, that while the filing of the petition operates to nullify all acts as to property sold or held under judicial process within four months prior to that event, except in case of liens given before the four months began, still the state court in which causes are pending is not bound to take judicial notice of the filing of the petition, but must have notice through pleadings filed therein. Collier on Bankruptcy, pp. 555, 556; Doe v. Childress, 21 Wall. (88 U. S.) 642, 22 L. Ed. 549; Eyster v. Goff, 91 U. S. 521, 23 L. Ed. 403; Miller v. Clements, 54 Tex. 354; Wallace v. Bogel, 62 Tex. 636; Pinkard v. Willis, 24 Tex. Civ. App. 69, 57 S. W. 891; Belcher v. Bush, 67 S. W. 444.

This seems to be the proper doctrine, for no court has judicial knowledge of the proceedings in other courts, and in order to bring home to a state court exercising proper jurisdiction over a case which arose before the jurisdiction of the bankrupt court had attached there must be some notice, by intervention or otherwise, of the pendency of the bankrupt proceedings. The mere filing of a petition in bankruptcy could not oust the jurisdiction of a state court over a cause lawfully pending when the petition was filed. Without a plea setting up the pendency of bankrupt proceedings, the state court could have no judicial knowledge of the fact that bankruptcy proceedings had been inaugurated. As said by the Supreme Court of the United States in Conner v. Long:

"In the present case it is admitted that the state court had full and perfect jurisdiction, in all respects, until it was terminated by the proceedings in bankruptcy. But the fact that put an end to its jurisdiction did not appear by its own record, and consequently one of which the sheriff could not, by legal possibility, have official notice; and without that he was bound to obey the order of that court, to whom he was responsible, directing the sale of the property, which, so far as he was concerned, at the time it was made, was an exercise of jurisdiction as legitimate as the issuing of the original attachment under which the property had been lawfully taken and held."

That decision has not been assailed or questioned, and, although made under the law of 1867, applies with equal force to the statute of 1898 and its amendments.

The act of 1898 recognizes the fact that notice is necessary to be given to render the purchase of property of the bankrupt invalid, by providing that:

"Nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

Notice of or inquiry about what? It must necessarily be about the matter treated of in the section which is the filing of the petition and would apply to purchases after the filing rather than before, because a purchaser could not have knowledge of a thing that did not exist when he purchased. He could not be held to be other than an innocent purchaser before the filing, unless he was perhaps guilty of fraud or collusion with the bankrupt. The only persons charged by the act with notice of the filing of the petition in bankruptcy are the creditors of the bankrupt, and this is inferred from the fact that the only instances in which creditors shall receive notice are carefully selected and specified in the bankruptcy statute. No valid notice was given in the cases in which the sheriff acted in selling the property claimed by the trustee.

[6] The only testimony as to the sheriff being notified of the filing of the petition was a telephone message to a deputy of the sheriff from a person whose authority to give such notice was not disclosed, in which he said that he intended to file a petition in bankruptcy. If the sheriff had refused to make the sales, and the intention to file the petition had been abandoned, he would have been in direct contempt of the court that had ordered him to make the sale, and the fact that some one had informed him that he intended to file a petition would probably not have been accepted as a valid excuse for not executing the orders of the court. The orders of a court of this state cannot be nullified or countermanded by a private individual notifying an officer of the court that he intends to file a petition in bankruptcy. The notice of such filing must come through official channels, and can be of no efficacy when issued by a citizen clothed with no authority. Such notice would doubtless put a person intending to purchase at a sheriff's sale on notice, but not an officer acting under authority of a court.

[7] There is no authority under Texas law for the assessment of attorney's fees against creditors or sureties on indemnity bonds in favor of a sheriff when he is sued for conversion of property by reason of attaching property at the instance of the creditors. The statute is explicit in stating that an officer levies an attachment at his own risk, but may take a bond of indemnification to secure him. Article 253, Rev. Stats. If he desired to save attorney's fees, he should have provided in his indemnity bonds that the parties would permit him to employ attorneys and pay their fees, or he could have notified his indemnitors to defend the causes against him and save him harmless. An officer who has obtained an indemnity bond before seizing property under an attachment, when a judgment is recovered against him for such seizure, can only recover on the bond for damages recovered against him for such seizure. Stevens v. Wolf, 77 Tex. 215, 14 S. W. 29. In that case the constable was indemnified to the extent of $192, and the court in giving judgment for that amount named $25 as attorney's fees, and the Supreme Court held that the officer was entitled to a judgment for $192, and it did not matter

that the court divided it and called part of it attorney's fees.

The other assignments of error present questions which could be of importance only in case of a reversal, and need not, therefore, be considered by this court, in view of affirmance of the judgment as to appellant.

The judgment is affirmed as between M. Coppard, trustee, and W. T. Gardner, sheriff, but is reversed as between the sheriff and the other parties, against whom he recovered for attorney's fees, and it is adjudged that he recover nothing as against them, and they recover of him all costs in this court incurred, and that all the other costs incurred be assessed against appellant.

---

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes